CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
SEP 16 2010
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:08CR00005-7 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| EFRAIN SANCHEZ-APARICIO, | ) | |
| | ) | By:  B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

On January 20, 2010, Efrain Sanchez-Aparicio ("petitioner") filed a motion to vacate, set aside or correct his sentence ("petition") pursuant to 28 U.S.C. § 2255. Essentially, the petitioner seeks to set aside his guilty plea and vacate his conviction on the aggravated identity theft count of the Indictment.[1] The United States moved to dismiss on March 22, 2010. On June 9, 2010, the presiding District Judge referred the case to the undersigned, under the authority of 28 U.S.C. § 636(b)(1)(B), to conduct an evidentiary hearing and render a report setting forth findings of fact, conclusions of law, and a recommended disposition of petitioner's claim that, in light of the Supreme Court's decision in *Flores-Figueroa v. United States*, ___ U.S. ___, 129 S. Ct. 1886 (2009), his guilty plea to aggravated identify theft was not intelligently made and that he is actually innocent. For the reasons that follow, the undersigned hereby RECOMMENDS that an Order enter GRANTING the government's motion to dismiss.

## PROCEDURAL BACKGROUND

On March 6, 2008, a grand jury returned a three-count Indictment. Count One charged

---

[1] While petitioner's motion to vacate could be construed a bit broader than that, it is clear from his August 27, 2010 Memorandum in Support of Petition ("Memorandum") that petitioner addresses only his conviction for aggravated identity theft under 18 U.S.C. § 1028A. Memorandum at p.1.

petitioner with conspiring to violate federal immigration laws, in violation of Title 18, United States Code, Section 371. Count Two charged petitioner with aggravated identity fraud, in violation of Title 18, United States Code, Section 1028A. Count Three charged him with conspiring to traffic identity documents, in violation of Title 18, United States Code, Section 1028.

On September 2, 2008, a guilty plea hearing under Federal Criminal Procedure Code Rule 11 was conducted before the undersigned. In accordance with a written plea agreement, petitioner entered a plea of guilty to Counts One and Two of the Indictment. The government submitted a statement of facts to support the petitioner's plea of guilty, and the undersigned recommended that the presiding District Judge accept the guilty plea. On October 7, 2008, the presiding District Judge adopted the Report and Recommendation and accepted petitioner's plea of guilty to Counts One and Two. On December 10, 2008, petitioner was sentenced to 24 months' imprisonment as to Count One and 24 months' imprisonment as to Count Two. Petitioner did not file a direct appeal.

On January 20, 2010, petitioner, *pro se,* filed the instant motion for relief pursuant to 28 U.S.C. § 2255 claiming that, under the Supreme Court's decision in *Flores-Figueroa v. United States,* ___ U.S. ___, 129 S. Ct. 1886 (2009), his guilty plea to aggravated identify theft was not intelligently entered and that he is actually innocent. Upon reference of the case to the undersigned, and in light of the need for evidentiary proceedings, the undersigned appointed Frederick T. Heblich, Jr., Esq., Federal Public Defender, to represent petitioner in these proceedings. Petitioner's counsel and the government each submitted briefs in support of their respective positions, and on September 9, 2010, the undersigned took the testimony of Special

Agent Larry Cosme, Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE").

**EVIDENCE PRESENTED**

The only evidence presented at the hearing was offered by the government and consisted of the testimony of Special Agent Cosme, who participated in an investigation in the Shenandoah Valley involving illegal aliens present in the United States with apparently appropriate documents which were represented by two exhibits offered into evidence during his testimony.[2]

Special Agent Cosme testified that he was an investigator assigned to the case. A group of illegal aliens were arrested in August 2007 from whom information was gathered that a certain individual, later identified as Edwin Mendez, had access to "genuine, authentic Puerto Rican documents with matching Social Security cards." Not only did the documents contain all the features of authenticity, when they were cross-checked with the government's databases, it could be determined they belonged to actual individuals. An undercover operation was established to effectuate controlled buys from Mendez and others involved in the illegal activity, including the petitioner, Efrain Sanchez Aparicio, a/k/a/Juan ("Sanchez"). Mendez later confirmed that Sanchez could provide "authentic documents."

The importance of these types of documents from Puerto Rico lay in the fact that they afford the holder the ability to work in the United States with certain tax advantages. The original information was that the members of the conspiracy would purchase actual birth certificates and

---

[2]During the course of his testimony, Cosme revealed that he has developed extensive experience and an expertise on the subject of identity document theft and trafficking, including the type employed in this case. He also testified that he instructs law enforcement personnel on the subject. There were no objections to his experience, qualifications and expertise in this field of law enforcement.

Social Security cards from a source who had stolen them from among records in Puerto Rican educational institutions. In turn, these documents were sent to other members of the conspiracy in the United States *via* FedEx or the U.S. Postal Service. In turn, the documents were sold to those illegally in the United States who would present them at a state motor vehicle department, where another member of the conspiracy would assist in securing final processing to obtain a driver's license with a photograph of the illegal alien with the birth and social security record of the person whose identity had been stolen.[3]

Cosme related that, since Puerto Rico is a United States territory, Puerto Ricans are issued a U.S. Social Security card. He also revealed that there are certain tax advantages for those in the United States who employ Puerto Rican citizens as well as for the Puerto Rican employee in that the employee may not be required to pay income tax. In addition, Puerto Rican educational institutions at all levels required students or their families to provide the original or "authentic" birth certificates and Social Security cards which were kept in the school files.[4] Thus, the thief obtained an authentic, genuine and official document of an actual person's birth as well as their Social Security card.

According to Cosme, these types of documents commanded a premium on the illegal trafficking market because they were of exceptional quality. These documents would link the

---

[3]Cosme testified that each illegal alien using the stolen documents to obtain a driver's license was coached in the process, including memorization of names and numbers. They were not to speak unless prompted to speak. The biggest risk or gamble was that when traced back to a photograph, there would be no match which would usually lead only to the alien's being turned down for the driver's license identification.

[4]As a result of this case and others like it, Puerto Rico no longer requires that the original documents be held in the educational institution.

person using them to an actual Puerto Rican citizen who not only was entitled to work in the United States but who also was afforded tax advantages under the federal tax code, such as the earned income credit and the exemption from withholding.

There also was another source of similar "authentic" or "genuine " identification documents available to the members of the conspiracy, but this time from within the United States. Various identification documents for children had been stolen from the official records of a county in Texas. The process for transforming these stolen documents into ones matching the illegal alien was identical to that used for the Puerto Rican documents.

According to Cosme, the petitioner revealed to the undercover personnel that he could acquire and did both acquire and distribute authentic and valid Texas identification documents to illegally transported aliens.[5] In that connection, Cosme stated that he used the term "authentic" and "valid' interchangeably to mean birth certificates and Social Security cards which were issued by the very governmental authority represented on the face of the document.[6]

The investigation showed that the petitioner, Sanchez, was involved in trafficking illegal documents in the form of Puerto Rican and Texas birth certificates and Social Security cards. Cosme related that Sanchez introduced the undercover agents to a person named Gomez as one who could help acquire such documents. During the investigation, Sanchez also sold agents or

---

[5] It should be noted, as it was noted in *United States v. Santana*, 361 Fed. Appx. 541, 542 (4th Cir. 2010), a summary of these facts were before the court in the body of the Presentence Investigation Report ("PSR") (Under Seal) prepared for petitioner's sentence. PSR, p. 6 at ¶ 14. The PSR was made available to petitioner, his counsel, the AUSA over the case and the sentencing court in advance of sentencing. To the undersigned's knowledge, no objections were asserted to this particular information.

[6] Copies of original birth certificates and Social Security card exemplars were introduced by the respondent, without objection. Evidentiary Hearing, Exhibits 1, 2.

their confidential informants "authentic and genuine" birth certificates and Social Security cards.[7]

The Indictment clearly charges petitioner, albeit then as a "Juan LNU," with knowingly possessing and transferring birth certificates and Social Security cards. See, e.g. Indictment, **COUNT TWO,** ¶ 1 realleges all of the allegations set forth in **COUNT ONE,** ¶ 4.

## CONTENTIONS OF THE PARTIES

*Petitioner*

Petitioner argues that his guilty plea should be vacated for numerous reasons. Initially, petitioner contends that his guilty plea was constitutionally deficient under *Bousley v. United States*, 523 U.S. 614 (1998), because the offense to which he pled guilty in Count Two was not explained to him by the court, the government, or his own counsel[8]. Petitioner argues that the Indictment did not provide him with notice of the charges against him. He asserts that the Indictment charged him with violating 18 U.S.C. § 1028(c)(8), yet this was clearly a typographical error because there is no such statute. Petitioner further argues that, even if the elements of the aggravated identity theft under 18 U.S.C. § 1028A had been explained to him, that explanation would have been informed by the extant, but later abrogated Fourth Circuit precedent in *United States v. Montejo*, 442 F.3d 213 (4th Cir. 2006) which did not require that the defendant know that the means of identification that he unlawfully transferred, possessed, or used belonged to "another person." Of course, *Flores-Figueroa* changed all that.

Next, petitioner contends that his guilty plea should not have been accepted because the

---

[7]According to petitioner's counsel, and not refuted by the government, none of these documents ever were processed to determine whether they belonged to an actual person.

[8]Petitioner has not raised a claim for ineffective assistance of counsel.

government failed to support it with a sufficient factual basis, namely that he knew the means of identity belonged to an actual person. Specifically, petitioner points to government's Statement of Facts filed at the time petitioner entered his guilty plea and asserts that no where in that statement does the government demonstrate that he had the requisite knowledge that the identification documents he was trafficking belonged to an actual person.

Petitioner concedes that the issue he raises under *Flores-Figueroa* was procedurally defaulted in that, while the case was extant, he did not raise it on direct appeal. Even so, petitioner contends that he should be permitted to pursue the instant collateral attack because he can establish "actual innocence" under *Bousley v. United States*. His argument is simple. The government had the burden of establishing that he had the requisite knowledge that the identification documents belonged to an actual person, and it was not met because the record is devoid of allegations, admissions or other evidence establishing the requisite knowledge.

Petitioner further contends that, even though his plea agreement contained a wavier of his right to file a collateral attack, the waiver is invalid because it was not knowing and voluntary. In this regard, petitioner asserts that his waiver could not have been knowing and voluntary because he was not apprised of the elements of the offense and, in turn, the true nature of the charges against him.

At the evidentiary hearing, petitioner did not object to the government's evidence. Instead, he simply took the legal positions that, with or without the evidence, the government cannot establish the requisite element of the offense and his plea remains invalid because he could not have been informed of the true nature of the offense. Thus, according to petitioner, his plea was not knowingly and intelligently entered.

*Respondent*

Respondent argues that petitioner's guilty pleas were constitutionally valid. Respondent contends that the Court's holding in *Flores-Figueroa* did not establish any new rules but merely set forth the proper interpretation of the statutory language in 18 U.S.C. § 1028A. Respondent contends that the petitioner received ample notice that he was being charged with trafficking in identity source documents belonging to real persons because the elements of 18 U.S.C. § 1028A were clearly set forth in the Indictment. Further, Respondent contends that there is no evidence that petitioner's counsel or the interpreter assisting petitioner during his Rule 11 hearing failed to advise him of the nature of the charges against him which were set forth in the Indictment.

Next, Respondent argues that there was and remains a sufficient factual basis to support petitioner's guilty plea. Respondent notes that, prior to the presiding District Judge's acceptance of petitioner's guilty plea, the court had the benefit of reviewing the factual admission contained in the Plea Agreement; the government's Statement of Facts, which were signed by petitioner and incorporated in the court's Report and Recommendation; petitioner's presentence report; and the guilty pleas of petitioner's co-conspirators.[9] Respondent contends that this provided the presiding District Judge with a sufficient factual basis upon which to support his guilty plea because it provided the Court with information about the crimes to which plaintiff pled guilty.

Respondent contends that there was sufficient evidence that petitioner knew he was trafficking identification documents belonging to real persons. Respondent asserts that it need not show that petitioner had "actual knowledge," and that petitioner's willful blindness to the

---

[9] Of course, neither the government nor the sentencing court had benefit of *Flores-Figueroa*, as it had not been decided before sentencing and final judgment.

knowledge that the identification documents belonged to real persons can be inferred through direct or circumstantial evidence.

Respondent next argues that petitioner's waiver of his right to collaterally attack his conviction, which is set forth in the Plea Agreement, is enforceable. Respondent asserts that petitioner had ample notice of the charges against him because the language in the Indictment tracks the language of 18 U.S.C. § 1028A, petitioner was well aware of the evidence that established his guilt as to each element of the offense, and the fact that not all of his co-conspirators were charged with aggravated identity fraud provided petitioner with notice that there was additional proof to support a finding that he was guilty of aggravated identity fraud.

**LEGAL PRINCIPLES, FINDINGS AND CONCLUSIONS**

In a case decided after the court sentenced the instant petitioner on his plea of guilty to the aggravated identity theft count of the indictment, the Supreme Court decided *Flores-Figueroa v. United States* and held that, in order to convict a defendant of aggravated identity theft under 18 U.S.C. § 1028A, the government must establish that the defendant knew he was using the identifying information of another actual person. There parties agree that the case applies here. *See United States v. Berry*, 369 Fed. Appx. 500, 502 (4th Cir. 2010); *United States v. Venancio-Dominguez*, 660 F. Supp 2d 717, 721 (E.D. Va. 2009). However, there are questions here about how the case is to be applied in view of the fact that petitioner pled guilty at a time when neither the parties nor the court knew of the breadth of the government's burden to prove knowledge.

The undersigned further observes that Fed. R. Cr. P. 11(b)(3) requires the court to determine whether there is a factual basis before entering judgment on a defendant's guilty plea.

9

*United States v. Kethchum*, 550 F.3d 363, 366 (4th Cir. 2008). The court is not required to rehearse an entire trial on the merits, but the court is to ascertain from anything in the record whether there is a factual basis for the defendant's understanding of the nature of the charges and his plea of guilty to them. *See United States v. Mastrapa*, 509 F.3d 652, 659-60 (4th Cir. 2007).

This is not the first time for the courts of this district to address a case where a defendant has sought to set aside a conviction under 28 U.S.C. § 2255 as the result of *Flores-Figueroa*. In fact, the presiding District Judge in this case recently addressed the matter in *United States v. Mellor*, 7:07CR00003 (W.D. Va. September 9, 2010), where the petitioner sought to set aside his conviction after a trial. However, post conviction challenges to a judgment entered upon a guilty plea are not common, and the only case decided by the Court of Appeals for the Fourth Circuit of which the undersigned is aware, unfortunately, was not selected for publication. *United States v. Santana*, 361 Fed. Appx. 541 (4th Cir. 2010). While neither party made reference to it, its instructive value will be discussed below.

**Procedural Posture**

The government initially presented countervailing arguments to Sanchez's legal contentions by reference to the discovery materials in possession of the defendant before his plea was negotiated. Further, the government contended that at the trial of codefendant, Nekia Mack-Fuller, it presented evidence that the conspirators knew that the birth certificates and social security cards belonged to real persons when used to obtain Ohio identification cards at the Ohio Bureau of Motor Vehicles ("BMV"). Unfortunately, the Mack-Fuller trial postdated petitioner's guilty plea, and its evidence never was proffered into the record of this case beyond the statement of facts submitted. Finally, the government observed that the facts necessary to meet its burden

under the *Flores-Figueroa* standard were submitted by the U.S. Probation officer to the parties and the court before judgment was entered on the plea in the PSR.

Nevertheless, the government sought leave to supplement its factual proffer on the ground that it should be given an opportunity to satisfy the *Flores-Figueroa* requirements now since, at the time of the original plea and sentencing proceedings, the breadth of its evidentiary responsibilities were not known.

The undersigned believes that the presiding District Judge's Order of Reference and the circumstances support such a contention. This is so because, if the evidence the government possessed but did not offer at the time of the plea and sentencing proceedings would have met the standard later articulated by the Supreme Court, it should not be penalized for failing to forecast the *Flores-Figueroa* outcome. Accordingly, the government contends that it should be able to now present that evidence to support the court's acceptance of the plea.

The undersigned believes the the government's motion to take supplemental evidence is well taken on two grounds. First, a defendant who has pled guilty has no absolute right to withdraw his guilty plea. *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991). The burden would be on the petitioner to show a "fair and just reason" to support his motion to vacate. *Id.*; *United States v. Agyepong*, 2010 WL 2852653, at *2 (4th Cir. 2010)(unpublished). Certainly, petitioner has challenged his conviction in a way which, absent proof of the requisite knowledge, he is entitled to the relief sought. His petition essentially shifts the burden to the government to come forward with evidence to rebut whether there are fair and just reasons to vacate his plea and judgment of conviction. The undersigned believes the government should be allowed to come forward with such rebuttal evidence.

As a corollary, it would appear unreasonable and unjust for the court to deprive the government of an opportunity to establish the *Flores-Figueroa* predicate facts when it was not required to do so before the case was decided. Simply put, the government either will be able to or not be able to show petitioner's requisite knowledge by direct or circumstantial evidence extant at the time that petitioner entered his plea of guilty to the charge of aggravated identity theft. If the government fails to do so, the petitioner would be entitled to the relief because the government would not have been able to provide any reasonable support to the court for its acceptance of the guilty plea. As this course seems to most closely track the charge given to the undersigned by the presiding District Judge in the Order of Reference, the government was permitted to adduce supplemental evidence.

**Assessment of the Law and Evidence**

In this court's judgment, *United States v. Santana*, 361 Fed. Appx. 510 (2010) says it all. While the case is not precedential because of its unpublished status, it certainly is persuasive. First, the *Santana* court appears to look to the record of the plea proceedings in that case and accepts recitations in the presentence report that reflect that the Puerto Rican documents were "authentic." As a result, and the reason, that court noted their quality and value because these birth certificate and Social Security cards identified real individuals. Finally, the court noted that the defendant there had not challenged the accuracy of the representations made to the district court. All of that equally is true here.

In addition, the government's supplemental evidence corroborates all that was set forth in the Indictment, the Plea Agreement, the PSR and the investigation against the petitioner. There is no evidence to the contrary, only the legal contentions offered by petitioner which the

12

undersigned believes cannot carry the day in these proceedings.

For these reasons, the undersigned FINDS that a factual basis has been established to support entry of judgment of conviction on petitioner's guilty plea to aggravated identity theft.

## RECOMMENDATION

The undersigned hereby RECOMMENDS that an Order enter GRANTING the government's motion to dismiss.

The Clerk is directed to immediately transmit the record in this case to the presiding District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U. S. Magistrate Judge

9/10/10
Date